UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| LATISHA E. DAVIS | CIVIL ACTION |
| VERSUS | |
| STAE BANK AND TRUST COMPANY | NO. 18-993-JWD-EWD |

### RULING AND ORDER

Before the court is a Motion for Summary Judgment ("Motion") filed by defendant, State Bank and Trust Company ("Defendant").[1] Latisha Davis ("Plaintiff"), who is representing herself, has filed an opposition memorandum,[2] and Defendant has filed a reply memorandum.[3] Oral argument is not necessary. Having carefully considered the law, the facts in the record, and the arguments and submissions of the parties, the Court finds that Plaintiff fails to provide sufficient evidence to create a genuine issue of material fact as to her Title VII race discrimination and retaliation claims. Accordingly, Defendant's Motion will be granted in its entirety, and all of Plaintiff's claims dismissed with prejudice.

**I.   BACKGROUND**

   **A.   Preliminary Note**

Preliminarily, it should be noted that, although Plaintiff is representing herself, a "court is not required to search for or try to create causes of actions or find material issues of fact for *pro se* plaintiffs."[4] Indeed, "a *pro se* litigant is not 'exempt . . . from compliance with the relevant rules

---

[1] R. Doc. 24.

[2] R. Doc. 26.

[3] R. Doc. 27.

[4] *Id.*

of procedural and substantive law.'[5] A pro se litigant is not entitled to greater rights than would be a litigant represented by a lawyer."[6] Finally, "[e]ven pro se litigants may not oppose summary judgment motions with unsworn material."[7]

Almost all the facts in this section are taken from Defendant's Statement of Uncontested Facts[8] for several reasons. First, the only competent summary judgment evidence came from Defendant. Neither Plaintiff's original complaint nor her memorandum in opposition to the Motion was sworn or verified under 28 U.S.C. § 1746. Likewise, Plaintiff did not file a proper statement of contested facts, in violation of Local Civil Rule 56(c).[9] Accordingly, Defendant's Statement of Undisputed Material Facts are deemed admitted under Local Civil Rule 56(f) because they are properly supported by record citations.[10]

Second, all Plaintiff's exhibits are unauthenticated documents. As this Court has stated:

> "To be considered by the court, "documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." … A document which lacks a proper foundation to authenticate

---

[5] *NCO Financial Systems, Inc. v. Harper–Horsley*, No. 07–4247, 2008 WL 2277843, at *3 (E.D. La. May 29, 2008) (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir.1981)).

[6] *Id*. (citing *Birl*, 660 F.2d at 593).

[7] *Turner v. Baird*, 707 Fed. App'x. 290, 291 (5th Cir. 2017) (*per curiam*).

[8] R. Doc. 24-1.

[9] In addition to supporting memoranda, Local Civil Rule 56 requires a Motion for Summary Judgment to "be accompanied by a separate, short, and concise statement of the material facts" that the movant contends are undisputed. Likewise, a party opposing summary judgment must also include, along with its opposition, "a separate, short and concise statement of the material facts as to which the opponent contends there exists a genuine issue to be tried." Local Civil Rule 56. Here, Defendant filed a Statement of Undisputed Fact. R. Doc. 24-1. While Plaintiff filed her own Statement of Facts, Plaintiff's statement does not comply with Local Civil Rule 56(c) because it does not "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts." Nor does it comply in full with Local Civil Rule 56(f), which requires "assertion[s] of fact set forth in a statement of material facts [to] be followed by a citation to the specific page or paragraph of identified record material supporting the assertion."

[10] Local Civil 56(f) states, "Facts contained in support or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted. An assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion. The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment."

> it cannot be used to support a motion for summary judgment." *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542 (9th Cir. 1989). *See also Martin v. John W. Stone Oil Distributor, Inc.*, 819 F.2d 547 (5th Cir. 1987) ("Unsworn documents are…not appropriate for consideration [on motion for summary judgment]"); *Moffett v. Jones County*, 2009 WL 1515119 (S.D. Miss., June 1, 2009) ("The records are not certified ... nor sworn in any way, thus they are inadmissible"); *Rizzuto v. Allstate Ins. Co.*, 2009 WL 1158677 (E.D. La. April 27, 2009) (same); 10A Charles Alan Wright, et al., *Federal Practice & Procedure* § 2722 (3rd ed. 1998).[11]

Although Plaintiff's exhibits were not properly authenticated, nearly all these documents were submitted by Defendant as well, so they have been considered in making this Ruling.[12]

### B.   Relevant Factual and Procedural Background

Plaintiff claims that Defendant, her former employer, discriminated against her based on her race and in retaliation, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").[13] She seeks compensatory damages, correction of her employee file, and other equitable relief.[14]

In September 2014, Defendant, a full-service banking, lending, and financial institution, hired Plaintiff, an African American female, as a Branch Manager 2 for the Florida Street Branch in Baton Rouge, Louisiana.[15] Plaintiff remained in the Branch Manager 2 position until her employment was terminated on August 10, 2016.[16]

Plaintiff received a copy of Defendant's Employee Handbook and Code of Ethics when she began her employment.[17] The Employee Handbook states, "[a]ll employment with

---

[11] *Hall v. Johnson*, No. 12-99, 2013 WL 870230, at *1, n. 1 (M.D. La. Mar. 7, 2013). *See also Robertson v. Home Depot, Inc.*, No. 14-806, 2017 WL 10888091, at *1-2 (M.D. La. Mar. 22, 2017).

[12] R. Docs. 24-6, 24-12, 24-14, 24-15; R. Docs. 26-1, 26-2, 26-4, 26-5.

[13] R. Doc. 1, p. 4.

[14] *Id*., pp. 5-6. Defendant's Motion for Partial Dismissal of Plaintiff's race discrimination claims was denied. R. Doc. 23.

[15] R. Doc. 24-1, ¶¶ 1-2; R. Doc. 24-16, p. 74:1-3. *See also* R. Doc. 26, p. 2, ¶ 1; R. Doc. 26-3, p. 1 ("Latisha Davis (Former Branch Manager/Florida St. Branch-black female)).

[16] R. Doc. 24-1, ¶¶ 2, 45. *See also* R. Doc. ¶ 1.

[17] R. Doc. 24-1, ¶ 3; R. Doc. 24-4; R. Doc. 24-16, p. 22:2-19.

[Defendant], unless explicit otherwise, is at will and shall be terminable at will, with or without cause and with or without notice, either by you or by [Defendant]."[18] The Employee Handbook contains a section on "Standards of Conduct," which provides that employees "are expected to conduct themselves in an ethical, professional and businesslike manner."[19] Employees are instructed to "[n]ever become angry or lose [their] temper."[20] The handbook further provides, "Failure to follow these or any other policies, regulations, or supervisory directives (oral or written) may result in disciplinary action which, depending upon the circumstances involved, may range from a verbal reprimand to termination of employment."[21] Plaintiff signed an acknowledgment, stating she received and read the Employee Handbook and Code of Ethics and agreeing to be bound by Defendant's policies.[22]

Plaintiff was disciplined several times for violations of company policy and substandard conduct while employed by Defendant.[23] Pursuant to Defendant's policy, each allegation of Plaintiff's company violation and/or substandard work was investigated by Lisa Givens ("Givens"), then Senior Vice President of Human Resources.[24] Prior to the termination of her

---

[18] R. Doc. 24-4, p. 4. *See also* R. Doc. 24-1, ¶ 6.

[19] R. Doc. 24-4, pp. 4-7. The Employee Handbook describes certain types of conduct it expects from its employees. *See, e.g., id.* at pp. 4-7, ¶ 2 ("It is expected that you will be PRESENT and ON TIME each day you are scheduled to work"), ¶ 4 ("Your job performance must meet the standards consistent with your position…"), ¶ 8 ("An employee's behavior must always reflect positively on the integrity and respectability of the Bank"), ¶ 9 ("Customers and fellow employees must always be treated with respect and courtesy. Discourtesy to, or harassment of, either customers or fellow employees will not be tolerated"), and ¶ 12 ("All employees must feel safe in the Bank. Threats, actual or implied, against any employee will not be tolerated").

[20] *Id*. at p. 2.

[21] *Id*. at p. 7.

[22] R. Doc. 24-5; *see also* R. Doc. 24-16, pp. 22:2 – 28:25. Plaintiff also received training on the Employee Handbook and Code of Ethics. R. Doc. 24-6.

[23] R. Doc. 24-1, ¶ 15. *See also* R. Doc. 26, p. 2, ¶ 3. In her statement of facts, Plaintiff claims she was disciplined for "only 2 offenses of substandard work dated 2/24/2015 and 7/31/2015." Despite this, Plaintiff testified in her deposition that she was disciplined at least seven times. R. Doc. 24-1, ¶ 23; R. Doc. 24-16, pp. 47:18-23.

[24] R. Doc. 24, ¶ 16; R. Doc. 24-3, ¶¶ 6-8, 15-20, 29-35; R. Doc. 24-17, ¶¶ 5-6, 9-18.

employment, Plaintiff was most recently disciplined on July 31, 2015 for violating Defendant's security policy by failing to conduct several monthly security checks over a two-month span.[25] As a result of the July 31 discipline, Defendant warned Plaintiff that her next violation of company policy would result in "immediate termination."[26]

In June or July 2016, Plaintiff volunteered for a shift at Defendant's Highland Road Branch.[27] During her shift, Plaintiff claims that Heather Lovell ("Lovell"), the Head Teller and a white female, made several inappropriate comments, including a single, racially insensitive comment.[28] Specifically, during a conversation where Josh, a white male co-worker, offered to pick up lunch, Plaintiff claims that Lovell said, "Josh eats chicken like a black person."[29] Plaintiff complained of Lovell's inappropriate comments and unprofessional behavior to Givens after her shift.[30] Givens investigated the incident and, after determining the allegations were credible, recommended that Lovell be disciplined for violation of company policy.[31] Givens, Ashlea Valentine ("Valentine"), the Highland Branch Manager, and Andrew Adler ("Adler"), Defendant's

---

[25] R. Doc. 24-1, ¶ 22; R. Doc. 24-11. Plaintiff's disciplinary record also includes (1) being disciplined on February 5, 2015 for violating Defendant's attendance policy because Plaintiff was tardy thirteen times in January 2015 (R. Doc. 24-7); (2) being disciplined on February 24, 2015 for violating company policy after "approving a check without first verifying the funds" (R. Doc. 24-8); (3) being disciplined on March 9, 2015 for violating Defendant's attendance policy because Plaintiff was late ten times in February (R. Doc. 24-9); and (4) being disciplined on September 14, 2015 for violating company policy by issuing a bank check to cash (R. Doc. 24-10).

[26] R. Doc. 24-1, ¶ 22; R. Doc. 24-11.

[27] R. Doc. 24-1, ¶ 21; R. Doc. 26, pp. 2, ¶ 4. Plaintiff claims the date was July 20, 2016, while Defendant claims it was June 23, 2016. The specific date is immaterial to the resolution of this Motion, as both parties agree what happened during the incident that occurred when Plaintiff worked a shift at the Highland Road Branch.

[28] R. Doc. 24-1, ¶¶ 24-32; R. Doc. 26, pp. 2-3, ¶ 4; R. Doc. 26-3, first paragraph. Head Teller, Lovell was not Plaintiff's supervisor, did not have supervisory authority over her, and did not have the same job duties as Plaintiff. R. Doc. 24-1, ¶¶ 26, 32; R. Doc. 24-3, ¶¶ 22, 28. Head Teller is below Branch Manager 2 in Defendant's corporate hierarchy. *Id.*

[29] R. Doc. 24-1, ¶ 27; R. Doc. 24-16, pp. 75:1 – 78:4; R. Doc. 26-17, ¶ 16. *See also* R. Doc. 26, pp. 2-3, ¶ 4; R. Doc. 26-3, first paragraph. Plaintiff also claims that Lovell engaged in other unprofessional and/or offensive behavior not related to race during that shift. R. Doc. 24-16, pp. 78:6 – 80:21. *See also* R. Doc. 26-3, first paragraph.

[30] R. Doc. 24-1, ¶ 25; R. Doc. 24-3, ¶ 21; R. Doc. 24-16, p. 77:12-19 ("Q: …So that was the only racially charged thing you heard? A: Yes.").

[31] R. Doc. 24-1, ¶ 28; R. Doc. 24-3, ¶¶ 24-25; R. Doc. 24-17, ¶¶ 16-17.

5

Vice President – Regional Executive, met with Lovell, formally disciplined her for violating company policy, and warned her that any subsequent violation of company policy would result in immediate termination.[32] At some point thereafter, Lovell terminated her employment with Defendant.[33]

On August 8, 2016, Plaintiff and one of her subordinates, Jeanette Herbert ("Herbert"), a teller, were involved in an incident at Defendant's Florida Street Branch.[34] Plaintiff and Herbert got into an argument after Plaintiff asked Herbert to assist a customer and Herbert refused.[35] Adler, who was at the Florida Street Branch, "heard screaming and yelling coming from the teller area."[36] Herbert reported the incident to Givens that day, claiming that Plaintiff (1) yelled at Herbert after she refused to retrieve a jammed ATM receipt for a customer and (2) threatened Herbert's job for not following instructions.[37] The next day, Plaintiff reported the incident to Givens.[38] Plaintiff claims that the two argued as Herbert refused to help a customer after Plaintiff told her to.[39] Plaintiff apologized to Givens for her outburst.[40] Plaintiff agreed in her deposition that she was "aggressive" during the incident with Herbert.[41]

---

[32] R. Doc. 24-1, ¶ 30; R. Doc. 24-3, ¶ 27; R. Doc. 24-17, ¶¶ 18-19. This was Lovell's first violation of company policy. *Id*.

[33] R. Doc. 24-1, ¶ 31; R. Doc. 24-3, ¶ 27.

[34] R. Doc. 24-1, ¶¶ 33-39; R. Doc. 24-3, ¶¶ 29-31; R. Doc. 24-16, pp. 48:7-25, 89:1 – 92:25; R. Doc. 24-17, ¶¶ 20-21. *See also* R. Doc. 26, p. 3, ¶ 5; R. Doc. 26-3, third paragraph.

[35] *Id*.

[36] R. Doc. 24-17, ¶ 20.

[37] R. Doc. 24-1, ¶¶ 34-36; R. Doc. 24-3, ¶¶ 29-30; R. Doc. 24-12, p. 4; R. Doc. 24-17, ¶ 21.

[38] R. Doc. 24-1, ¶¶ 37-39; R. Doc. 24-3, ¶¶ 31; R. Doc. 24-13; R. Doc. 24-17, ¶ 21. *See also* R. Doc. 26, p. 3, ¶ 5; R. Doc. 23, third paragraph.

[39] *Id*.

[40] R. Doc. 24-1, ¶ 39; R. Doc. 24-3, ¶¶ 31-32; R. Doc. 24-13; R. Doc. 24-17, ¶ 25.

[41] R. Doc. 24-1, ¶ 42; R. Doc. 24-16, p. 89: 17-20 ("Q: The second one, the pictures for that one, you were probably a little more aggressive; correct? A: Correct."). However, in her opposition memorandum, Plaintiff claims that she was "frustrated" rather than aggressive because "Herbert was not doing what was asked of her." R. Doc. 26, p. 3, ¶ 6.

Givens documented and investigated both complaints, and she consulted with Adler, who was the sole decision maker regarding the termination of employment as to Herbert and Plaintiff.[42] As part of her investigation, Givens pulled and reviewed security footage for the Florida Street Branch.[43] According to Givens, the footage shows Plaintiff and Herbert arguing and Plaintiff with her fist clenched appearing to yell at Herbert.[44] Givens determined that both Plaintiff and Herbert violated Defendant's employee conduct policy, and she recommended to Adler that both be terminated from employment.[45] Adler accepted Givens' recommendations and terminated Plaintiff and Herbert on August 10, 2016.[46] While meeting with Plaintiff, Adler explained the reasons for Plaintiff's termination, including her violation of company policy regarding the incident with Herbert, as well as Plaintiff's prior violations of company policy and the July 31 final warning.[47] Both Givens and Adler have declared under penalty of perjury that they did not take race or Plaintiff's prior complaint regarding Lovell's racially insensitive remark into account in Givens' recommendation, or Alder's decision, to terminate Plaintiff's employment with Defendant.[48]

Defendant did not replace Plaintiff after she was terminated, and it ended the Branch Manger 2 position at the Florida Street Branch.[49]

On December 12, 2016, Plaintiff filed a charge with the U.S. Equal Employment

---

[42] R. Doc. 24-1, ¶¶ 40, 50; R. Doc. 24-3, ¶ 29, 31-32; R. Doc. 24-12; R. Doc. 24-13; R. Doc. 24-17, ¶¶ 21-22.

[43] R. Doc. 24-1, ¶ 41; R. Doc. 24-3, ¶ 32; R. Doc. 24-12, pp. 6-7; R. Doc. 24-17, ¶ 22. *See also* R. Docs. 26-4, 26-5.

[44] *Id*.

[45] R. Doc. 24-1, ¶ 43; R. Doc. 24-3; ¶¶ 34-35; R. Doc. 24-17, ¶ 23.

[46] R. Doc. 24-1, ¶¶ 44-45; R. Doc. 24-3, ¶ 34-35, 38; R. Doc. 24-15; R. Doc. 24-17, ¶ 24.

[47] R. Doc. 24-1, ¶ 47; R. Doc. 24-15; R. Doc. 24-17, ¶ 28. *See also* R. Doc. 26-3, pp. 1-2, fourth paragraph.

[48] R. Doc. 24-1, ¶¶ 48-49; R. Doc. 24-3, ¶¶ 36-37; R. Doc. 24-17, ¶¶ 26-27.

[49] R. Doc. 24-1, ¶¶ 54-55; R. Doc. 24-3, ¶¶ 39-40; R. Doc. 24-17, ¶¶ 29-30. Plaintiff claims without citing any record evidence that she was "replaced by another employee (Debra Angelloz/Branch Manager – white female)." R. Doc. 26, p. 2, ¶ 1.

Opportunity Commission ("EEOC"), alleging that Defendant violated Title VII.[50] Plaintiff received a Notice of Right to Sue letter from the EEOC on or about August 6, 2018.[51] The Notice of Right to Sue letter states, in part, "Based on its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statute."[52]

On November 2, 2018, Plaintiff filed a Complaint against Defendant, alleging that Defendant violated Title VII by discriminating and retaliating against Plaintiff based on her race which resulted in the termination of her employment.[53]

### C. Defendant's Motion and the Parties' Arguments

On September 30, 2019, Defendant moved for summary judgment, arguing that there are no material facts at issue and Plaintiff has no evidence and cannot establish a prima facie case of discrimination or retaliation.[54] Specifically, Defendant claims Plaintiff cannot establish a prima facie case of discrimination because she "cannot show that she was replaced by or treated less favorably that someone outside her protected class," and, "[e]ven if she could, [Plaintiff] admitted she has no evidence, let alone sufficiently substantial evidence, to demonstrate that the stated nondiscriminatory grounds for her termination were pretext."[55] Likewise, regarding Plaintiff's retaliation claims, Defendant contends that Plaintiff cannot establish a prima facie case because "she cannot show she engaged in a protected activity as a matter of law [or] that the potentially protected activity was the but for cause for her termination."[56]

---

[50] R. Doc. 1-1. *See also* R. Doc. 26, pp. 4-5, ¶ 1.

[51] R. Doc. 1-1. *See also* R. Doc. 26, p. 5, ¶ 3.

[52] R. Doc. 1-1

[53] R. Doc. 1, pp. 3-4. *See also* R. Doc. 26, p. 5, ¶ 4.

[54] R. Doc. 24.

[55] R. Doc. 24, 24-2, p. 2.

[56] *Id*.

8

Plaintiff opposed the Motion.[57] Plaintiff's opposition appears to be premised on the idea that "[w]hen a summary judgment motion is made, all of the opposing party's statements must be accepted as true . . . ."[58] Although Plaintiff's recitation of the facts largely mirrors Defendant's, Plaintiff disputes Defendant's characterization of several events.[59] Plaintiff supports her opposition memorandum with several documents, including a purported statement from Latisha Anderson ("Anderson"), a former co-worker, that are not properly authenticated and are not competent summary judgment evidence.[60]

Defendant filed a reply memorandum, reiterating its arguments as to why Plaintiff's claims should be dismissed.[61] Defendant also contends Plaintiff has failed to come forward with competent summary judgment evidence establishing the elements of her claims or showing that a material issue remains for trial.[62]

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.[63] A party moving for summary judgment must inform the court of the basis for

---

[57] R. Doc. 26.

[58] *Id.* at p. 4.

[59] *See, e.g.*, *id.* at p. 2, ¶ 2 (noting that the New Employee Orientation Checklist (R. Doc. 24-6) was not signed by Plaintiff, even though Defendant makes no allegation to that effect), p. 2, ¶ 3 (noting that she was only disciplined twice, not numerous times (*see also* ns. 21, 23)), p. 3, ¶ 6 (noting that the surveillance video photos (R. Doc. 24-14) do not show customers present for the incident, do not show Plaintiff yelling, and show Plaintiff being "frustrated," rather than "aggressive"). These disputes do not create genuine issues of material fact.

[60] *See* R. Doc. 26 and R. Docs. 26-6. *See also* Section I(A) above.

[61] R. Doc. 27.

[62] *Id.*

[63] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no genuine issue of material fact.[64] If the moving party carries its burden of proof under Rule 56, the opposing party must direct the court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.[65] This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.[66] Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.[67] Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party.[68] In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.[69]

### B.    Plaintiff's Discrimination Claims under Title VII

Title VII prohibits employers from discriminating against employees on the basis of race, among other provisions.[70]    Employment discrimination on the basis of race may be proven

---

[64] *Celotex Corp.*, 477 U.S. at 322.

[65] *Anderson*, 477 U.S. at 248.

[66] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[67] *Celotex Corp.*, 477 U.S. at 323.

[68] *Little*, 37 F.3d at 1075.

[69] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

[70] 42 U.S.C. § 2000e-2(a).

"through either direct or circumstantial evidence."[71] Plaintiff has presented no direct evidence of discrimination, and she admitted in her deposition that she has no direct evidence.[72]

Because Plaintiff "does not allege any direct evidence of discrimination," the Court will "apply the familiar *McDonnell Douglas* burden shifting analysis.'"[73] "A plaintiff must establish the following elements of a prima facie case under the *McDonnell Douglas* framework: (1) [she] is a member of a protected group; (2) [she] was qualified for [her] position; (3) [she] was discharged or suffered some other adverse employment action; and (4) [she] was replaced with a person outside of the protected class, or [she] was treated less favorably than similarly situated employees of a different race."[74]

"To survive summary judgment under *McDonnell Douglas*, the plaintiff must first present evidence of a prima facie case of discrimination."[75] "If the plaintiff presents a prima facie case of discrimination, then an inference of discrimination arises, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reasons for the underlying employment action."[76] "If the defendant presents a nondiscriminatory reason, the presumption of discrimination ceases, and the plaintiff must 'offer sufficient evidence to create a genuine issue of material fact either that: (1) the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative);

---

[71] *Jones v. Overnite Transp. Co.*, 212 Fed. App'x 268, 272 (5th Cir. 2006) (citing *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002).

[72] R. Doc. 24-16, p. 72:12 – p. 73:6; p. 77:4 – p. 78:5.

[73] *Robertson*, 2017 WL 1088091, at *9 (M.D. La. Mar. 22, 2017), quoting *Riley v. Sch. Bd. Union Par.*, 379 Fed. App'x. 335, 339 (5th Cir. 2010) (citing *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004)).

[74] *Jones*, 212 Fed. App'x. at 272-73 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (U.S. 1973)).

[75] *Riley*, 379 Fed. App'x. at 339. *See also Robertson*, 2017 WL 1088091, at *10.

[76] *Id.*

11

or (2) the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motive[s] alternative).'"[77]

A plaintiff may also raise an inference of discrimination by comparing her treatment to that to "nearly identical, similarly situated individuals."[78] But, "[t]o establish disparate treatment…a plaintiff must show that the employer gave preferential treatment to another employee under nearly identical circumstances."[79] "Alternatively, '[a]n explanation is false or unworthy of credence if it is not the real reason for the adverse employment action."[80] "However, a plaintiff cannot prove that an employer's proffered reason is pretextual merely by disputing the correctness of the employer's decision."[81] Indeed, when conducting a pretext analysis, courts "do not engage in second-guessing of an employer's business decisions. Title VII does not require employers to make correct decisions, only nondiscriminatory decisions."[82]

Here, Defendant concedes that the first three elements of the *McDonell Douglas* framework are met but contends that Plaintiff has failed to carry her burden of establishing a prima facie case of discrimination because Plaintiff has not and cannot present evidence showing she was replaced with a person outside of her protected class or treated less favorably than a similarly situated employee of a different race.[83] The Court agrees.

Plaintiff has neither provided the Court with, nor directed it to, any competent summary

---

[77] *Willis v. Napolitano*, 986 F.Supp.2d 738, 745 (M.D. La. Dec. 10, 2013) (quoting *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). *See also Riley*, 379 Fed. App'x. at 339 (quoting *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002)); *Robertson*, 2017 WL 1088091, at *10.

[78] *Riley*, 379 Fed. App'x. at 339 (citing *Bryant v. Compass Group USA Inc.*, 414 F.3d 471, 478 (5th Cir. 2005)).

[79] *Id*. (internal quotations removed).

[80] *Id*. at 339 (quoting *Laxton*, 333 F.3d at 578).

[81] *Burton*, 584 Fed. App'x. 256, 257 (5th Cir. 2014) (citations omitted).

[82] *Id.* at 258.

[83] R. Doc. 24-2, pp. 10-12.

judgment evidence supporting her unsworn claim that she was "replaced by another employee (Debra Angelloz/Branch Manager – white female)."[84] Likewise, Plaintiff has presented no evidence to counter the Declarations of Givens and Adler, who both state that, after the termination of her employment, Plaintiff was not replaced and her position—Branch Manager 2—was ended at the Florida Street Branch. Plaintiff has not shown that there is a genuine issue of material fact as to whether she was replaced, much less by someone of a different race.

Further, to the extent Plaintiff attempts to carry her burden of establishing element four of the *McDonnell Douglas* framework by showing she was treated less favorably than a "similarly situated employee of a different race," that attempt also fails. While Plaintiff references Lovell in her Complaint, deposition, and opposition memorandum, Plaintiff has presented no evidence that the employment actions taken against her and Lovell occurred "under nearly identical circumstances."[85]

Employment actions against a plaintiff and her comparator "will be deemed to have been taken under nearly identical circumstances when the employees being compared: (1) held the same job or responsibilities; (2) shared the same supervisor or had their employment status determined by the same person; *and* have essentially comparable violation histories."[86] Courts will consider "disparities in employment hierarchy as evidence that employees are not similarly situated."[87] "[C]ritically, the plaintiff's conduct that drew the adverse employment decision must have been

---

[84] R. Doc. 26, p. 2, ¶ 1.

[85] *Player v. Kan. City S. Ry. Co.*, 496 Fed. App'x. 479, 481 (5th Cir. 2012) (quoting *Lee v. Kan City. S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009)). *See also Willis*, 986 F.Supp.2d at 745 (citations omitted) ("In disparate treatment claims, the plaintiff-employee must show 'nearly identical' circumstances for employees to be considered similarly situated. The Fifth Circuit has noted that 'nearly identical' is not synonymous with 'identical' because total identity would be essentially insurmountable.").

[86] *Willis*, 986 F.Supp.2d at 745 (quoting *Lee*, 574 F.3d at 260) (emphasis added in *Willis*).

[87] *See Willis*, 986 F.Supp.2d at 745 and cases cited there.

13

'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employments decisions.'"[88]

The only competent summary judgment evidence before the Court shows that Plaintiff and Lovell held different jobs with different responsibilities. Plaintiff was a Branch Manager 2, and Lovell was a Head Teller. Further, Plaintiff's position was above Lovell's in Defendant's company hierarchy, and Plaintiff had more job-related responsibilities. Finally, there is a large discrepancy in the disciplinary histories of Plaintiff and Lovell. Plaintiff was disciplined several times for violating Defendant's policies; Lovell was disciplined once.[89]

Moreover, even if Plaintiff could make a prima facie case, her claims against Defendant still fail because she has put forth no competent summary judgment evidence showing that Defendant's legitimate, nondiscriminatory reason for her termination is pretext. The Declarations of Givens and Adler state that Plaintiff was fired for "arguing loudly and getting into a workplace confrontation with" Herbert.[90] This is combined with Plaintiff's disciplinary history, which includes the July 31, 2015 discipline for security violations where Adler warned Plaintiff that any future violation of company policy would result in immediate termination.[91] The Declarations of Givens and Adler, who was the sole decisionmaker, also state under penalty of perjury that they

---

[88] *Player*, 496 Fed. App'x at 482.

[89] *Compare* R. Doc. 24-3, paragraph 15 and R. Doc. 24-17, paragraph 9 (explaining that during her employment with Defendant, Plaintiff "was disciplined numerous times for company policy violations and substandard conduct"); R. Doc. 24-16, 47:18-23 (""Q: So we kind of went over seven instances of kind of violations of company policy in the form of tardiness, issuance of checks, the DBA exception and security. Each and every time were you given an opportunity to correct the action? A: Yes."), with R. Doc. 24-17, paragraph 19 and R. Doc. 24-3, paragraph 27 (explaining that Given, Valentine, and Adler "met with [Lovell] on July 6, 2016 and gave [Lovell] a written disciplinary action for company policy violations. This was [Lovell's] first policy violation.").

[90] R. Doc. 24-3, ¶ 34 and R. Doc. 24-17, ¶¶ 23-24. Adler also testifies in his Declaration that he heard "screaming and yelling coming from the teller area" on August 8, 2016 but that when he went to investigate "everything had subsided." R. Doc. 24-17, ¶ 20.

[91] R. Doc. 24-17, ¶ 28 ("My decision was made based on Ms. Davis's prior work history, her past instances of substandard conduct, her previous final warning, and the violation of company policy she committed by arguing loudly at a coworker in the workplace."). *See also* R. Doc. 24-15.

did not consider Plaintiff's race when deciding to terminate Plaintiff after her incident with Herbert.[92] Although these Declarations may be self-serving in this respect, Plaintiff's only evidence of pretext is her belief that Defendant's stated reason for firing her is pretext (despite admitting she has no evidence that Adler's explanation of why her employment was terminated was a lie).[93] A plaintiff's beliefs alone are not competent summary judgment evidence and an "[e]mployer is entitled to judgment as a matter of law if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision."[94] Plaintiff has failed to carry her burden of showing that Defendant's proffered reason for the termination of her employment was not true or that, while true that the decision was related to Plaintiff's confrontation with Herbert, race was also a motivating factor.

Plaintiff has failed to sustain her burden of showing a genuine issue of material fact as to whether there was discrimination based on race. In sum, Plaintiff has failed to satisfy her prima facie burden with respect to her termination because she cannot establish the fourth element of the

---

[92] R. Doc. 24-3, ¶ 36 and R. Doc. 24-17, ¶¶ 25-26.

[93] *See* R. Doc. 24-16, pp. 71:19 – 72:25. *See also* R. Doc. 1-1, p. 5. Plaintiff also appears to rely on the statement of Anderson to show that Defendant's stated reason for her firing is pretext. R. Doc. 26, p. 3, ¶ 7 ("Plaintiff stated that she had no physical evidence to the incident, but…Plaintiff was able to obtain a witness statement [from Anderson] and provided it to Defendant. (See Exhibit 6)." In her statement, Anderson claims that she was in the training room with the door closed around the time of the incident, and (1) that she heard Plaintiff tell Herbert to "watch who you're talking to [and] remember who the manager is," (2) that she "didn't hear [Plaintiff] raise her voice," and (3) that Plaintiff "always kept it very professional at all times." R. Doc. 26-6. Plaintiff's reliance on Anderson's statement is insufficient to create a material issue of fact. First, Anderson's statement is not competent summary judgment evidence for the reasons explained in n. 60 and Section I(A) above, and it was not considered by the Court in making this Ruling. Second, even if it had been considered, Anderson's statement does not show that Defendant's explanation of why Plaintiff was terminated is pretext for discrimination. While Anderson seems to dispute whether Plaintiff instigated the argument or screamed at Herbert, she does not dispute that Plaintiff and Herbert argued in the workplace. Further, to the extent Anderson's statement contradicts Plaintiff's own deposition testimony that Plaintiff was "aggressive" in her second exchange with Herbert and that Anderson was only there for one of two exchanges, Anderson's statement does not create a genuine issue of material fact. *See* R. Doc. 24-16, pp. 73:2-10 and 89:17-22. At most, Anderson's statement (and Plaintiff's argument) seem to disagree with whether Defendant made the correct decision in terminating Plaintiff's employment because she did not initiate the situation with Herbert. However, "Title VII does not require employers to make correct decisions, only nondiscriminatory decisions." *See Burton*, 584 Fed. App'x. at 258.

[94] *See Chapple v. Texas Health and Human Services Commission,* 789 Fed. App'x 985, 990 (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000)).

*McDonell Douglas* framework. Likewise, Plaintiff has failed to demonstrate that Defendant's explanation is unworthy of credence or that race was a motivating factor in its decision. Given the facts in the record, all reasonable jurors would conclude that Plaintiff was fired because of the incident with Herbert, coupled with Plaintiff's significant history of discipline for company policy violations, not because of Plaintiff's race. As a result, summary judgment on Plaintiff's Title VII discrimination claims is granted, and those claims are dismissed with prejudice.

### C. Plaintiff's Retaliation Claims under Title VII

Retaliation claims under Title VII are also analyzed under the *McDonnell Douglas* standard.[95] "A plaintiff may establish a prima facie case of retaliation by demonstrating that: '(1) she participated in a Title VII protected activity, (2) she suffered an adverse employment action by her employer, and (3) there is a causal connection between the protected activity and the adverse action.'"[96] "Summary judgment is appropriate if the plaintiff cannot support all three elements."[97]

Defendant contests the first and third elements of Plaintiff's prima facie case. Regarding the first element, "[u]nder Title VII, protected activities consist of: (1) opposing a discriminatory practice; (2) making or filing a charge; (3) filing a complaint; or (4) testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing."[98] An employee that files an internal complaint of discrimination engages in a protected activity.[99] "However, while opposition to discrimination need not be in formal written form, internal complaints must reference

---

[95] *Davis v. Dallas Indep. Sch. Dist.*, 448 Fed. App'x. 485, 492 (5th Cir. 2011). *See also Robertson*, 2017 WL 1088091, at *14.

[96] *Id*. (quoting *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009)). *See also Robertson*, 2017 WL 1088091, at *14; *Willis*, 968 F.Supp.2d at 747.

[97] *Id.* (quoting *Stewart*, 586 F.3d at 331.)

[98] *Willis*, 986 F.Supp.2d at 747 (citing *Rodriguez v. Wal-Mart Stores, Inc.*, 540 Fed. App'x. 322, 328-29 (5th Cir. 2013)).

[99] *Id*. (citing *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 194 (5th Cir. 2001)).

16

discrimination or other unlawful employment activity in order to be protected."[100] Additionally, "[t]o satisfy this opposition requirement, [a plaintiff] need only show that she had a 'reasonable belief that the employer was engaged in unlawful employment practices.'"[101]

Here, Plaintiff believes that Defendant retaliated against her for reporting Lovell's unprofessional behavior and racially insensitive comment to Givens after Plaintiff's shift at the Highland Road Branch. Conversely, the Declarations of Givens and Adler state that neither took Plaintiff's complaint about Lovell into consideration when Defendant decided to terminate Plaintiff.[102] Considering all proper summary judgment evidence, the Court finds that no reasonable juror could conclude that Plaintiff engaged in protected activity when she reported Lovell's racially insensitive comment to Givens/Defendant. Plaintiff could not have reasonably believed that reporting Lovell was opposing any unlawful employment practice by Defendant. First, Lovell, who made the statement, was not Plaintiff's employer, nor did she exercise supervisory control over Plaintiff.[103] Second, after Plaintiff reported Lovell—a subordinate—Defendant investigated Plaintiff's complaint, found it to be credible, and disciplined Lovell, including giving her a final warning. Accordingly, Plaintiff could not have reasonably believed that a single, racially

---

[100] *Id.*

[101] *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 348 (5th Cir. 2007) (quoting *Byers v. Dallas Morning News*, 209 F.3d 419, 428 (5th Cir. 2000)).

[102] R. Doc. 24-3, ¶ 37 ("I did not take Ms. Davis's complaint regarding Ms. Lovell's racially sensitive insensitive comment into consideration when making this recommendation to Mr. Adler."); R. Doc. 24-17, ¶ 27 ("I did not take Ms. Davis's complaint regarding Ms. Lovell's racially insensitive comment into consideration."). Again, while these Declarations may be self-serving in this respect, Plaintiff has provided no summary judgment evidence to counter Givens and Adler's statements.

[103] *See Vance v. Union Planters Corp.*, 279 F.3d 295, 299 (5th Cir. 2002) (citations omitted) ("An individual qualifies as an employer under Title VII solely for purposes of imputing liability to the true employer if he or she serves in a supervisory position and exercises significant control over the plaintiff's hiring."). Here, the competent summary judgment evidence before the Court shows that Lovell was not Plaintiff's employer, her supervisor, or someone with "significant control" over Plaintiff's hiring or firing. *See* R. Doc. 24-3, ¶¶ 22 (stating (1) that, as Head Teller, Lovell "was not [Plaintiff's] supervisor…[and] is considered below [Plaintiff's] position in [Defendant's] corporate hierarchy," and (2) "Lovell never had supervisory authority over [Plaintiff]…[and] played no role in the ultimate decision to terminate [Plaintiff]'s employment.").

insensitive comment by Lovell, which was investigated and addressed by Defendant, "constituted an unlawful employment practice [by Defendant] in and of [itself, so Plaintiff's] response to this incident cannot be considered protected activity."[104]

Even if Plaintiff could establish that she engaged in protected activity under Title VII, Plaintiff has failed to establish that there is a causal nexus between her protected activity and her termination. Title VII retaliation claims must be proved according to traditional principles of but-for causation.[105] "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."[106] "The Fifth Circuit has interpreted this but-for standard to apply to the plaintiff's burden of establishing a *prima facie* retaliation case."[107] As such, to establish the third element of a prima facie case, *Nasser* requires Plaintiff to provide "sufficient evidence" that her reporting of Lovell was the "but-for" cause of her termination, and that, had she not reported Lovell, she would have remained in her Branch Manager 2 position at the Florida Street Branch. Plaintiff has not provided any evidence to show that her reporting of Lovell was the but-for cause of her termination.[108] Indeed, for the same reasons that Plaintiff's race discrimination claims fail (her argument with Herbert and history of

---

[104] *See Turner*, 476 F.3d at 348-49. *See also Robertson*, 2017 WL 1088091, at *14-15 (discussing what constitutes a complaint regarding what constitutes protected activity under Fifth Circuit precedent); *Moore v. United Parcel Service, Inc.*, 150 Fed. App'x. 315, 320 (5th Cir. 2005) (finding that plaintiff, who filed a grievance about being disqualified as a driver but made "no mention of race discrimination," was "not engaged in a protected activity, as his grievance did not oppose or protest racial discrimination or any other unlawful employment practice under Title VII.").

[105] *Univ. of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 359 133 S.Ct. 2517, 2532-33 (2013). *See also Willis*, 986 F.Supp.2d at 748.

[106] *Id*. at 2533.

[107] *Willis*, 986 F.Supp.2d at 748 (citing *Finnie v. Lee County, Miss.*, 541 Fed. App'x. 368, 371-72 (5th Cir. 2013) ("To meet the third prong [of a prima facie case], *Nasser* requires that [plaintiff] provide sufficient evidence to allow a reasonable juror to conclude that her filing of an EEOC claim was the 'but-for' cause of her termination, and that, had she not filed the claim, she would have remained in her position at the Lee County Detention Center.")).

[108] *See Davis*, 448 Fed. App'x. at 494 (affirming district court's dismissal of plaintiff's Title VII retaliation claim on summary judgment because plaintiff "presented no evidence of causation" and instead "simply relied on her own subject beliefs that [defendant's] actions were retaliatory.").

discipline), she is unable to prove that her reporting of Lovell was the cause for her termination.

Summary judgment is appropriate on Plaintiff's Title VII retaliation claims as Plaintiff has failed to establish all three elements of a prima facie case with sufficient summary judgment evidence. There is no question of fact on this issue, as the evidence is uncontroverted. No reasonable juror could conclude that Plaintiff engaged in protected activity under Title VII when she reported Lovell's conduct, nor could any reasonable juror conclude that Plaintiff's reporting of Lovell was the but-for cause of her termination. As a result, summary judgment on Plaintiff's Title VII retaliation claims is granted, and those claims are dismissed with prejudice.

### III. CONCLUSION

Because Plaintiff fails to provide sufficient evidence to create a genuine issue of material fact as to her Title VII race discrimination and retaliation claims, **IT IS ORDERED** that the Motion for Summary Judgment,[109] filed by Defendant State Bank and Trust Company, is **GRANTED**, and all of Plaintiff Latisha Davis's claims are **DISMISSED WITH PREJUDICE.**

Signed in Baton Rouge, Louisiana, on September 30, 2020.

_____
**HONORABLE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[109] R. Doc. 24.